UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAFAEL CEARA,

                              Plaintiff,

        v.

DOCCS OFFICER JOSEPH DEACON,

                              Defendant.

No. 13-CV-6023 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Rafael Ceara
Ossining, NY
*Pro Se Plaintiff*

Bradley Gordon Wilson, Esq.
Frederick Hongyee Wen, Esq.
Attorney General of the State of New York
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Rafael Ceara ("Plaintiff") brought the instant pro se Action pursuant to 42 U.S.C. § 1983

against New York State Department of Corrections and Community Supervision ("DOCCS")

Officer Joseph Deacon ("Deacon" or "Defendant"), alleging that Defendant subjected Plaintiff to

excessive force when Defendant pushed Plaintiff down several stairs, and then threatened

Plaintiff to deter him from filing a grievance about the incident, in violation of his rights under

the Eighth and Fourteenth Amendments of the United States Constitution.  (*See* Am. Compl.

(Dkt. No. 7).)  Before the Court is Defendant's Motion For Summary Judgment pursuant to

Federal Rule of Civil Procedure 56.  (*See* Notice of Mot. for Summ. J. (Dkt. No. 44).)  The

Motion advances only the arguments that Plaintiff's Action is time-barred and that Plaintiff

failed to exhaust his administrative remedies.  For the following reasons, Defendant's Motion is granted.

## I.  Background

### A.  Factual Background

Plaintiff arrived at Downstate Correctional Facility ("Downstate") on August 13, 2010 and was placed in D Block in Complex 1.  (*See* Def.'s Statement Pursuant to Local Rule 56.1 ("Def.'s 56.1") ¶¶ 1, 2 (Dkt. No. 48); Pl.'s Opposing Statement Pursuant to Local Rule 56.1 ("Pl.'s 56.1") ¶ 1 (Dkt. No. 51).)[1]  Plaintiff stayed in D Block until he was transferred to Elmira Correctional Facility ("Elmira") on or around September 24, 2010.  (*See* Def.'s 56.1 ¶ 2; Pl.'s 56.1 ¶ 2.)[2]  Defendant was a regular block officer on D Block in Complex 1 when Plaintiff lived in D Block.  (*See* Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 3.)  As the block officer, Defendant would normally walk around and check cells on D Block.  (*See* Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 3.)  Defendant's brother also regularly worked as an officer on D Block.  (Dep. of Rafael Ceara (Nov. 20, 2015) ("Pl.'s Dep.") 27–28 (Dkt. No. 45-1).)

On September 5, 2010, Plaintiff either fell, (Def.'s 56.1 ¶ 4), or was pushed by Defendant, (Pl.'s 56.1 ¶ 4), down a set of stairs.  This disagreement is immaterial for purposes of this Motion.  After the incident, Plaintiff went to the medical unit and filled out an Inmate Injury Report, in which he stated that "C.O. Deagon pushed me down the stairs with extreme force." (*See* Def.'s 56.1 ¶ 4; Pl.'s 56.1 ¶ 4; Pl.'s Ex. N-1 (Dkt. No. 53-12).)  The next day, Plaintiff wrote to Ada Perez, the Superintendent of Downstate ("Perez"), and stated that "Officer Deagan" pushed him down the stairs.  (*See* Def.'s 56.1 ¶ 5; Pl.'s 56.1 ¶ 5; Pl.'s Ex. E-1 (Dkt. No. 53-5).)

_____

[1] Most of the facts pertinent to this Motion are not in dispute.  The Court notes where the facts are in dispute.

[2] Plaintiff asserts that he was transferred on September 21, 2010.  (*See* Pl.'s 56.1 ¶ 2.)

On September 9, 2010, Plaintiff filed a grievance relating to the September 5 incident, which stated that "C.O[.] Deagan" pushed him down the stairs.  (*See* Def.'s 56.1 ¶ 6; Pl.'s Ex. D-2 (Dkt. No. 53-4).)  On September 17, 2010, Plaintiff drafted an Inmate Grievance Complaint, which stated that "officers" threw Plaintiff down several flights of stairs and, in the subsequent days, threatened his life and well-being.  (*See* Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; Pl.'s Ex. D-3 (Dkt. No. 53-4).)[3]  The grievance complaint read at the top:  "Note: this is my second grievance on this matter."  (Pl.'s 56.1 ¶ 6; Pl.'s Ex. D-3.)  Plaintiff averred that he wrote this second grievance because he "had not heard [anything] or receive[d] any response from [the] first grievance [filed] 8 day[s] prior."  (Pl.'s 56.1 ¶ 8.)  On or about September 27, 2010, Lieutenant McKeon ("McKeon") interviewed Plaintiff regarding Plaintiff's grievance.  (Def.'s 56.1 ¶ 9; Pl.'s 56.1 ¶ 9; Pl.'s Dep. 132–134.)

On October 5, 2010, Perez decided Plaintiff's grievance.  (Pl.'s Ex. A-3 (Dkt. No. 53-1).)  The decision stated that the "[i]nvestigation reveals no evidence to support [Plaintiff's] allegations of staff misconduct."  (*Id.*)  The decision also included a form appeal statement.  (*Id.*)[4]  It is undisputed that Plaintiff did not appeal Perez's decision to the Central Office Review

---

[3] Although Plaintiff referred to multiple officers as having thrown him down the stairs, he uses singular pronouns throughout the grievance complaint.  For example, he states that "for the past 12 day[s] since *he* thr[e]w me down the stairs . . . ."  (Pl.'s Ex. D-3 (emphasis added).)

[4] Plaintiff questioned how Perez could have made his decision on Plaintiff's grievance on October 5, 2010, when fax transmittal forms demonstrate that McKeon's investigatory report was not sent to Downstate until October 6, 2010.  (*See* Pl.'s 56.1 ¶ 10; Pl.'s Exs. A-1, A-2 (Dkt. No. 53-1).)  While this may call into question the soundness of Perez's decision, it does not cast doubt on the fact that Perez issued the decision on Plaintiff's grievance on October 5, 2010, and that Pl.'s Ex. A-3 is a copy of that decision.

Committee ("CORC").  (Def.'s 56.1 ¶ 11; Pl.'s 56.1 ¶ 11.)[5]  However, Plaintiff avers that he never received Perez's decision or any appeal form.  (Pl.'s 56.1 ¶¶ 11, 13.)

On October 28, 2010, Plaintiff met with Investigator Todd ("Todd") from the Department of Corrections and Community Supervision Inspector General's Office, and Plaintiff told Todd that Defendant pushed him down the stairs.  (*See* Def.'s 56.1 ¶ 7; Pl.'s 56.1 ¶ 7.)  Todd's notes contain multiple references to "C.O. Deagan."  (*See* Pl.'s Ex. H-1 (Dkt. No. 53-7).)  The notes indicate that Defendant's brother also works in the same area at Downstate and that Defendant is the "taller" of the two brothers.  (*Id.*)

On or around July 25, 2012, Plaintiff sent a letter to Karen Bellamy ("Bellamy"), Director of the Inmate Grievance Program ("IGP").  (Def.'s 56.1 ¶ 12; Pl.'s 56.1 ¶ 12; Pl.'s Ex. B-2 (Dkt. No. 53-2).)[6]  The letter referred to Plaintiff's grievance related to the September 5 incident and stated "I would like a response by CORC on behalf of such grievance.  I had never gotten a response on such grievance and it was never brought up."  (Pl.'s Ex. B-2.)  On September 14, 2012, Jeffrey Hale ("Hale"), Assistant Director of IGP, responded to Plaintiff's letter and told Plaintiff that his grievance "was answered by the Superintendent on September 10, 2010 and [Plaintiff] did not appeal."  (Def.'s 56.1 ¶ 13; Pl.'s 56.1 ¶ 13; Pl.'s Ex. B-1 (Dkt. No. 53-2); Pl.'s Ex. D-3.)  Hale avers that he recently reviewed CORC records to determine whether Plaintiff appealed the relevant grievance to CORC and the records demonstrate that Plaintiff "did not appeal to CORC any grievances that he filed while at Downstate Correctional Facility,"

---

[5] Although Plaintiff concedes he did not file an appeal of Perez's decision, he notes that he sent a letter regarding the September 5 incident to Inspector General Richard Roy, dated September 17, 2010, and to the New York State Police, also dated September 17, 2010 requesting investigation of the incident.  (*See* Pl.'s 56.1 ¶ 11; Pl.'s Exs. G-2, I-2 (Dkt. Nos. 53-6, 53-8).)

[6] Defendant's statement pursuant to Rule 56.1 states the letter was sent June 25, 2012.  (*See* Def.'s 56.1 ¶ 12.)  However, both the letter, (*see* Pl.'s Ex. B-2), and the response, (*see* Pl.'s Ex. B-1), indicate that the letter was dated July 25, 2012.

including the grievance at issue here.  (Decl. of Jeffery Hale ("Hale Decl.") ¶¶ 4–5, 7 (Dkt. No. 46).)

### B.  Procedural History

Plaintiff filed his original Complaint on August 22, 2013.  (*See* Compl. (Dkt. No. 2).)
The original Complaint named "Correctional Officer John Doe which [sic] worked at Downstate
Corr[ectional] [F]ac[ility] on Sep[tember] 5, 2010 on [sic] the 7[] a[.]m[.] [to] 3[] p[.]m[.] shift in
D-Block, Complex 1" as the defendant.  (*Id.* at 1.)  Directly below the information provided
about the defendant, Plaintiff stated that he "wrote to [the] Inspector General for [the] full names
and have had no respon[s]e."  (*Id.*)  In parenthesis, the Complaint notes "C.O. Deagan, [h]e has
[an] old[er] brother by [the] same name."  (*Id.*)  As "Defendant No. 1," Plaintiff listed "John Doe
(C[.]O. Deagan younger brother)."  (*Id.*)

On September 5, 2013, the Court issued an Order pursuant to *Valentin v. Dinkins*, 121
F.3d 72 (2d Cir. 1997), directing the New York State Attorney General (the "Attorney General")
to ascertain the identity and address of the John Doe Defendant that Plaintiff named in the
original Complaint within 60 days.[7]  (*See* Order of Service (Dkt. No. 5).)  The Order provided
that "Plaintiff must file an amended complaint naming the John Doe Defendant" within 30 days
of receiving information about the defendant from the Attorney General.  (*Id.* at 2.)  In response,
the Attorney General notified the Court and Plaintiff by letter dated October 25, 2013, that
"Officer John Haag and Officer Joseph Deacon were on duty during the 7:00 a.m. to 3:00 p.m.
shift on September 5, 2010."  (Letter from Richard W. Brewster, Esq., to the Court (Oct. 25,
2013) (Dkt. No. 6).)  Plaintiff then filed the Amended Complaint on November 22, 2013,

---

[7] In *Valentin v. Dinkins*, the Second Circuit held that a pro se litigant is entitled to
assistance from the district court in identifying a defendant.  121 F.3d at 75.

substituting "Joseph Deacon, D.O.C.C.S., Officer" for "Correctional Officer John Doe." (Am. Compl. 1.)

Defendant filed a Motion To Dismiss, which was fully briefed on September 19, 2014, and sought to dismiss the Complaint on timeliness grounds only. (Dkt. Nos. 17–20.) On November 25, 2014, the Court issued an Opinion and Order denying Defendant's motion. (*See* Op. & Order ("Opinion") (Dkt. No. 21).) The Court found that Plaintiff sufficiently alleged that his Amended Complaint, filed after the statute of limitations had run, related back to the filing of the original Complaint under Federal Rule of Civil Procedure 15(c)(1)(A). (*Id.* at 17.)

Defendant filed the instant Motion For Summary Judgment, (Notice of Mot. for Summ. J.), and accompanying memorandum of law on February 5, 2016, (*see* Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") (Dkt. No. 49)). Plaintiff submitted a memorandum of law in opposition to the Motion on April 5, 2016. (*See* Mem. of Law in Supp. of Pl.'s Opposing [sic] Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") (Dkt. No. 53).) Defendant filed his reply on April 19, 2016. (*See* Reply Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply") (Dkt. No. 56).) Pursuant to an Order issued August 8, 2016, the Court requested supplemental briefing on the issue of whether Plaintiff's Amended Complaint should relate back to his original Complaint under Federal Rule of Civil Procedure 15(c)(1)(C). (*See* Dkt. No. 60.) Defendant filed a supplemental memorandum of law on August 26, 2016, (*see* Suppl. Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Suppl. Mem.") (Dkt. No. 61)), and Plaintiff filed his supplemental response on September 28, 2016, (*see* Mem. of Law in Supp. of Pl.'s Suppl. Briefing ("Pl.'s Suppl. Mem.") (Dkt. No. 67)).

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at *2 (S.D.N.Y. Apr. 9, 2014) (same).  "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alterations and internal quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'"  *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere allegations or denials contained in the pleadings," *Walker v. City of New York*, No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, MDL No. 1358, No. M21–88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and internal quotation marks omitted).

B.  Analysis

    1.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all personal incidents while in prison.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures").  Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'"  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006) (alteration omitted)).  Finally, the PLRA applies even to a plaintiff who is not currently incarcerated, provided that he had been incarcerated when he brought his initial suit.  *See Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) ("Because [the plaintiff] was a confined prisoner at the time he filed his lawsuits, [§] 1997e(a) is applicable."); *see also Clemons v. Futch*, No. 07-CV-7200, 2015 WL 8526683, at *1 (S.D.N.Y. Oct. 16, 2015) (same).  Indeed, the PLRA demands "strict compliance with the grievance procedure . . . , or else dismissal must follow inexorably."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (internal quotation marks omitted).

Nevertheless, "[b]ecause failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (alterations, citations, and internal quotation marks omitted); *see also Powell v. Schriro*, No. 14-CV-6207, 2015 WL 7017516, at *6 (S.D.N.Y. Nov. 12, 2015) (same).[8]

Therefore, the Court must answer the following questions:  (1) did Plaintiff exhaust his administrative remedies, and (2) if not, does some exception permit his claim to proceed nonetheless?

### a. Did Plaintiff Exhaust?

New York has a three-step grievance process for inmates in its correctional facilities. (*See* Def.'s Mem. 10–12 (citing tit. 7, N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7 § 701 et seq.).)  *See also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y.

---

[8] Plaintiff argues that Defendant "should be estoppe[d] from asserting the affirmative defense of non-exhaustion" because Defendant "fail[ed] to timely raise or preserve it by not bringing it up in [his] Motion [T]o Dismiss." (Pl.'s Opp'n 17, 19.)  Failure to exhaust administrative remedies is an affirmative defense to be raised and proven by a defendant. *See Hubbs*, 788 F.3d at 59; *Jenkins v. Haubert*, 179 F.3d 19, 28–29 (2d Cir. 1999).  Federal Rule of Civil Procedure 8(c) requires only that an affirmative defense be included in a responsive pleading; it need not be the subject of a motion to dismiss. *See Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) (finding that under Rule 8(c), an affirmative defense "must be asserted in a party's responsive pleading at the earliest possible moment and is a personal defense that is waived if not promptly pleaded" (internal quotation marks omitted)).  Here, Defendant's Answer, filed before his Motion To Dismiss, stated that "[s]ome or all of [P]laintiff's claims may be barred, in whole or in part, by his failure to exhaust available administrative remedies and/or to complete statutory prerequisites for bringing his claim."  (Answer ¶ 10 (Dkt. No. 22).)  This language is sufficient to assert the defense of failure to exhaust administrative remedies under the PLRA. *See Tardif v. City of New York*, 302 F.R.D. 31, 36 (S.D.N.Y. 2014) ("As numerous federal courts have held, an affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives the plaintiff fair notice of the nature of the defense." (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1274 (3d ed. 1998))).

Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing N.Y.C.R.R. tit. 7 § 701.1(c))).  Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence.  N.Y.C.R.R. § 701.5(a)(1).  Despite this time limit, a grievant may request an exception, *see id.*, "based on mitigating circumstances," *id.* § 701.6(g)(1)(i)(*a*), but no exception will be granted "if the request was made more than 45 days after an alleged occurrence," *id.* Upon receipt, the grievance clerk consecutively numbers and logs each grievance.  *Id.* § 701.5(a)(2).  Additionally, once filed, the representatives of the Inmate Grievance Resolution Committee ("IGRC") have up to 16 calendar days to resolve the grievance informally.  *Id.* § 701.5(b)(1).  If the matter is not satisfactorily resolved, the IGRC conducts a hearing to either answer the grievance or make a recommendation to the superintendent, *id.* § 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.* § 701.5(b)(2)(ii).

The second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the written response, although the appealing party can seek an exception to the time limit, *id.* § 701.5(c)(1), again based on mitigating circumstances, *id.* § 701.6(g)(1)(i)(*b*), provided that the request was not made more than 45 days after the date of the decision, unless the late appeal asserts a failure to implement the IGRC's decision, *see id.*

The third and final step of the process is to appeal the superintendent's decision to the CORC, which the inmate must do within seven days of the superintendent's written response to the grievance.  *Id.* § 701.5(d)(1)(i).  Here, too, an inmate may request an exception to the time limit, *id.*, if based on mitigating circumstances and if made within 45 days of the date of the

11

decision, unless, again, the late appeal asserts a failure to implement the decision, *id.* § 701.6(g)(1)(i)(*b*).

The framework operates slightly differently for harassment and discrimination claims. *See id.* §§ 701.8, 701.9.  For harassment charges, although an inmate must still follow the procedures identified above and contained in § 701.5(a), *see* § 701.8(a), the regulations also provide that "[a]n inmate who feels that he/she has been the victim of harassment should report such occurrences to the immediate supervisor of that employee," although "this is not a prerequisite for filing a grievance with the IGP," *id.*  Additionally, the framework provides that "[a]ll documents submitted with [a grievance alleging harassment] must be forwarded to the superintendent by close of business that day," *id.* § 701.8(b), and that the superintendent personally or through a designee "shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in [§] 701.2," *id.* § 701.8(c), which defines "[h]arassment grievances" as "those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate," *id.* § 701.2(e).  If it is not, the grievance is returned to the IGRC for normal processing.  *Id.* § 701.8(c).  If it is a bona fide harassment issue, however, the superintendent must then (1) initiate an in-house investigation into the allegations by higher-ranking supervisory personnel, (2) request an investigation by the inspector general's office, or (3) request an investigation by the New York State Police Bureau of Criminal Investigation, if the superintendent determines that criminal activity may be involved.  *Id.* § 701.8(d).  The superintendent then must render a decision within 25 calendar days of receipt of the grievance, *id.* § 701.8(f), and, if she does not, the grievant may appeal to the CORC, *id.* § 701.8(g).  When a grievant wishes to appeal the superintendent's response to the CORC, the grievant must do so within seven days of the receipt of that response.  *Id.* § 701.8(h).

Similarly, in the case of discrimination claims, the grievance must be forwarded to, among others, the superintendent within 24 hours, *id.* § 701.9(c), who then has 25 days from the receipt of a grievance to render a decision, *id.* § 701.9(f), and the inmate has seven calendar days from receipt of the response to appeal, *id.* § 701.9(g).  Regardless of whether a given grievance is governed by § 701.8's procedure for harassment claims, § 701.9's procedure for discrimination claims, or the more general framework found in § 701.5, the grievant must appeal to the CORC before his claims are fully exhausted.  *See id.* §§ 701.5(d), 701.8(g)–(h), 701.9(g)–(i); *see also, e.g.*, *Medina v. Napoli*, No. 07-CV-497, 2015 WL 5638101, at *5 (W.D.N.Y. Sept. 24, 2015) ("[T]he courts have not hesitated to grant summary judgment dismissing inmates' § 1983 complaints under the PLRA's mandatory exhaustion requirement where the evidence contains no record of appeal to the CORC.") *appeal filed*, No. 15-CV-3396 (Oct. 26, 2015); *Richardson v. N.Y. State Dep't of Corr.*, No. 13-CV-6189, 2014 WL 3928785, at *6 (S.D.N.Y. Aug. 11, 2014) ("While [one of the plaintiffs] filed grievances with [the correctional facility's] IGP concerning [the incidents at issue], [the] [p]laintiffs' submissions do not show that either of these grievances were appealed to the CORC in accordance with §§ 701[].5 and 701.8."), *aff'd*, 633 F. App'x 816 (2d Cir. 2016).

Plaintiff and Defendant agree that Plaintiff failed to complete the third and final step— the appeal of Perez's decision to the CORC pursuant to N.Y.C.R.R. § 701.5(d)(1)(i).  (*See* Def.'s 56.1 ¶ 11; Pl.'s 56.1 ¶ 11.)  Therefore, because "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court," *Jones v. Bock*, 549 U.S. 199, 211 (2007), something must excuse Plaintiff's noncompliance with the DOCCS's grievance process in order for him to avoid summary judgment.

13

b.  Does an Exception Apply?

At the time the Parties submitted their briefing on the instant Motion, the seminal Second Circuit case addressing when an inmate's nonexhaustion could be overlooked was *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004).  Along with its progeny, *Hemphill* articulated three such circumstances:  (1) when administrative remedies were "not available to the prisoner," (2) when the defendant had waived or was estopped from raising the defense, or (3) when special circumstances, such as a reasonable misunderstanding of the grievance procedures, justified the prisoner's failure.  *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686).  Recently, the legal topography surrounding the PLRA changed dramatically.  First, in June 2016, the Supreme Court officially shelved nontextual exceptions to the PLRA's exhaustion requirement.  *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).  In so doing, the Supreme Court singled out for special abrogation the Second Circuit's decision in *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), which was the progenitor of the "special circumstances" exception in its then-modern form.  *See Ross*, 136 S. Ct. at 1856.  Nevertheless, the Supreme Court noted that the PLRA contained its own textually rooted "built-in" exhaustion exception for remedies that are not "available," and identified three circumstances when "an administrative remedy, although officially on the books, [would] not [be] capable of use to obtain relief."  *Id.* at 1858–59.  First, the Supreme Court noted that "an administrative procedure [would be] unavailable when . . . it operate[d] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.* at 1859.  Second, the Supreme Court noted that "an administrative scheme might be so opaque that it [would] become[], practically speaking, incapable of use," which, the Court explained, would be the case when "some mechanism exist[ed] to provide relief, but no ordinary prisoner [could] discern or

14

navigate it." *Id.* Third, the Supreme Court observed that a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Second, and more germane to the case at hand, the Second Circuit decided *Williams v. Priatno*, which addressed *Ross*'s second unavailability exception. *See* 829 F.3d 118 (2d Cir. 2016). In *Williams*, the inmate claimed to have drafted a grievance while in the special housing unit ("SHU") on January 15, 2013, alleging that he had been assaulted by two corrections officers. *See id.* at 120. According to the plaintiff, he gave the grievance to a correction officer to file on his behalf because he was in the SHU. *Id.* at 120–21. One week later, when the facility's superintendent was making rounds in the SHU, Williams claimed to have told the superintendent about the incident and that he had not heard back about it. *Id.* at 121. The superintendent said that she would look into it. *Id.* About a week later, the inmate was transferred to another facility and never heard back. *Id.* The inmate did not file an appeal in connection with that grievance, and, in the course of litigation, alleged that the correction officer to whom he originally gave the drafted grievance never filed it. *Id.*

The Second Circuit explained that, under the relevant DOCCS regulations (the same ones that apply in this case), where an inmate grievance presents a bona fide harassment issue, the superintendent must conduct an investigation and notify the inmate of the outcome within 25 days, and that, if the superintendent does not respond in time, the grievant could appeal to the CORC. *See id.* at 120 (citing N.Y.C.R.R. §§ 701.8(d), (f), (g)). Noting also that N.Y.C.R.R. § 701.6(g)(2) permits an inmate to appeal a grievance "to the next step" if he or she does not receive a response, the Second Circuit nonetheless concluded that "even if [the plaintiff] technically could have appealed his grievance, . . . the regulatory scheme providing for that

appeal [was] 'so opaque' and 'so confusing that no reasonable prisoner [could] use it.'" *Id.* at

124 (alterations and internal quotation marks omitted).  In so concluding, the Second Circuit

noted that the fact that the inmate in *Williams* was transferred between facilities approximately

two weeks after handing off his grievance made the procedure even more obscure in the court's

estimation.  *See id.* at 126.

      Unlike the inmate in *Williams*, Plaintiff does not dispute that his grievance was filed in

the first instance.  However, like the inmate in *Williams*, the grievance program to which

Plaintiff was subject was governed by the framework in N.Y.C.R.R. § 701 et seq., (*compare*

*Williams*, 829 F.3d at 119–20, *with* Def.'s Mem. 10–12), and importantly, like the inmate in

*Williams*, Plaintiff was transferred from one facility to another between the time when he filed

the grievance and the timeframe in which to appeal, (*compare Williams*, 829 F.3d at 121, *with*

Def.'s 56.1 ¶ 2; Pl.'s 56.1 ¶ 2).

      There is a provision in the regulations that provides for situations where inmates are

transferred during the grievance process:  "If the [transferred] grievant wishes to appeal, he or

she must mail the signed appeal form back to the IGP supervisor at the facility where the

grievance was originally filed within seven calendar days after receipt."  N.Y.C.R.R.

§ 701.6(h)(2).  However, in *Williams*, the Second Circuit found that "this provision presumes . . .

that the inmate received an appeal form that he can sign and mail back," 829 F.3d at 125, which

Plaintiff specifically asserts he never did, (Pl.'s 56.1 ¶¶ 11, 13).  "The regulations plainly do not

provide guidance on how a transferred inmate can appeal his grievance with the original facility

without having received a response."  *Williams*, 829 F.3d at 126.  Therefore, like the inmate in

*Williams*, "the regulatory scheme providing for that appeal [was] 'so opaque' and 'so confusing

that . . . no reasonable prisoner [could] use it." *Id.* at 124 (some alterations and internal quotation marks omitted).[9]  Thus, the Court finds that the PLRA is no barrier to Plaintiff's lawsuit.

### 2.  Statute of Limitations

Section 1983 does not provide for a specific statute of limitations, so courts apply the statute of limitations for personal injury actions under state law.  *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (same); *Vasconcellos v. City of New York*, No. 12-CV-8445, 2014 WL 4961441, at *4 (S.D.N.Y. Oct. 2, 2014) (same).  Under New York law, the statute of limitations for personal injury claims is three years.  *See* N.Y. Civ. Practice Law and Rules ("CPLR") § 214(5) ("The following actions must be commenced within three years:  . . . an action to recover damages for a personal injury"); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (stating that in § 1983 actions brought in New York, the applicable limitations period is found in the state statute of limitations for personal injury actions and that the period is three years).  "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations," *Hogan*, 738 F.3d at 517, which begins to accrue "when the plaintiff knows or has reason to know of the harm," *Shomo*, 579 F.3d at 181 (internal quotation marks omitted).

In Plaintiff's original Complaint, filed on August 22, 2013, he listed "Correctional Officer John Doe which [sic] worked at Downstate Corr[ectional] [F]ac[ility] on Sep[tember] 5, 2010 on [sic] the 7[] a[.]m[.] [to] 3[] p[.]m[.] shift in D-Block, Complex 1" as the defendant.

---

[9] The Court notes that Plaintiff in fact argues that he had a "misunderstanding of [the] PLRA and procedure of law."  (Pl.'s Opp'n 16.)  However, the language of *Ross* and *Williams* are both unmistakably objective.  *See Williams*, 829 F.3d at 124 ("[W]e conclude that the regulatory scheme providing for that appeal is 'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it].'" (second and third alterations in original) (quoting *Ross*, 136 S. Ct. at 1859)).  The emphasis in *Ross* and *Williams* on objective reasonability renders Plaintiff's subjective understanding of the grievance procedures immaterial.

(Compl. 1.)  Plaintiff did not identify Deacon by name until he filed the Amended Complaint on November 22, 2013, after the statute of limitations had expired.  Defendant argues that because he was not named in this matter until after the three-year statute of limitations had run, Defendant is entitled to summary judgment.  (*See* Def.'s Suppl. Mem. 1.)

"Generally, 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."  *Hogan*, 738 F.3d at 517 (internal quotation marks omitted); *see also Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993) (same).  "Such an amendment may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met."  *Aslanidis*, 7 F.3d at 1075; *see also JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *12 (S.D.N.Y. Apr. 24, 2014) (same), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014).  Accordingly, as Plaintiff did not list Defendant by name until after the statute of limitations expired, his claims are timely only if the statute of limitations was tolled, *see Gonzalez v. Hasty*, 651 F.3d 318, 323–24 (2d Cir. 2011), or the Amended Complaint relates back to the original Complaint under Rule 15(c), *see Vasconcellos*, 2014 WL 4961441, at *5.  The Court will first consider whether equitable tolling applies, and then whether the Amended Complaint relates back under Federal Rules of Civil Procedure 15(c)(1)(C) and 15(c)(1)(A).

### a.  Equitable Tolling

The Second Circuit has held that that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process."  *Gonzalez*, 651 F.3d at 323–24 (internal quotation marks omitted).  "[T]he toll [applies] only to the time period in which the inmate is *actively exhausting* his administrative remedies, and not the anterior time period in

between the accrual of the claim and when the prisoner initiated the administrative remedy process." *Id.* at 322 n.2.

Plaintiff alleges that Defendant pushed him down the stairs and threatened him on September 5, 2010.  (Am. Compl. 2.)  Plaintiff first filed his grievance on September 9, 2010.  (*See* Def.'s 56.1 ¶ 5; Pl.'s 56.1 ¶ 5; Pl.'s Ex. E-1.)  Perez issued a decision on October 5, 2010, (*see* Pl.'s Ex. A-3), and Plaintiff did not appeal Perez's decision to the CORC within the seven days allotted under N.Y.C.R.R. § 701.5(d)(1)(i), (*see* Def.'s 56.1 ¶ 11; Pl.'s 56.1 ¶ 11).  Therefore, Plaintiff's claims were tolled from September 9, 2010 through October 12, 2010, while he was actively exhausting his administrative remedies.  *See Gonzalez*, 651 F.3d at 323–24.  Because Plaintiff did not take the subsequent step and file an appeal, the statute of limitations began running on October 12, 2010.  *See Medina v. Nassau Cnty. Sherriff Dep't.*, No. 11-CV-228, 2013 WL 4832803, *5–6 (E.D.N.Y. Sept. 10, 2013) (noting that "even if [the] plaintiff had submitted a proper grievance that was not returned to him, [the] plaintiff's failure to appeal . . . requires dismissal of the action"); *Mendoza v. Goord*, No. 00-CV-146, 2002 WL 31654855, at *2 (S.D.N.Y. Nov. 21, 2002) (finding the plaintiff's failure to appeal an adverse decision on his grievance constituted a failure to exhaust administrative remedies, despite his claim of never receiving notice of the decision on his grievance).[10]  Accordingly, Plaintiff had

---

[10] While Plaintiff could have made a request for an extension of time to file an appeal within 45 days of Perez's decision, (*see* N.Y.C.R.R. § 701.6(g)(1)(i)(*b*)), he did not do so.  Even were the Court to consider that Plaintiff was actively exhausting his remedies through the 45-day period during which he could have requested an extension, the three-year statute of limitations would have started to run on November 19, 2010.  Plaintiff's Amended Complaint, filed November 22, 2013, would still have been untimely.  *See United States v. Locke*, 471 U.S. 84, 101 (1985) ("A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day.").

three years—until October 12, 2013—to file his lawsuit against Defendant.[11]

Because the burden to establish entitlement to equitable tolling falls on the Plaintiff, *see, e.g.*, *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." (internal quotation marks omitted)), and without an indication that the plaintiff was actively exhausting as to toll the limitations period, *see Gonzalez*, 651 F.3d at 322 n.2, his burden is unmet. Therefore, the Court concludes that tolling during the period of time when Plaintiff was exhausting his administrative remedies does not make his claim timely.

### b.  Federal Rule of Civil Procedure 15(c)(1)(C)

For an amended pleading adding a new party to relate back under Rule 15(c)(1)(C):

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, *but for a mistake of identity*, the original action would have been brought against it; and . . . (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period.

*Hogan*, 738 F.3d at 517 (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–69 (2d Cir. 1995)). Defendant does not dispute that Plaintiff has fulfilled the first two requirements to have his Amended Complaint relate back under Rule 15(c)(1)(C). However, Defendant contests

---

[11] Plaintiff sent an inquiry to Bellamy regarding the status of his grievance on July 25, 2012—nearly two years after filing the grievance. (*See* Def.'s 56.1 ¶ 12; Pl.'s 56.1 ¶ 12; Pl.'s Ex. B-2.) Plaintiff received a response to this letter from Hale on September 14, 2012. (*See* Def.'s 56.1 ¶ 13; Pl.'s 56.1 ¶ 13; Pl.'s Ex. D-3.) However, Plaintiff's claim is not tolled from July 25, 2012 through September 14, 2012, because Plaintiff's course of conduct—a letter to Bellamy rather than a timely appeal—was not the appropriate means of exhaustion. *See Davis v. Jackson*, No. 15-CV-5359, 2016 WL 5720811, at *7 (S.D.N.Y. Sept. 30, 2016) (finding the plaintiff did not benefit from equitable tolling for certain of his claims because he did not use the proper mode of exhaustion for those claims).

Plaintiff's ability to meet the third requirement that Defendant "should have known that, *but for a mistake of identity*, the original action would have been brought against [him]." *Id*. Defendant challenges Plaintiff's assertion that he "didn't know the [D]efendant's identity," (Pl.'s Supp. Mem. 10), during the three-year statute of limitations period as sufficient evidence of "a mistake concerning the proper party's identity," *see* Fed. R. Civ. P. 15(c)(1)(C). "[F]ailure to identify [the] [D]efendant[] when . . . [P]laintiff knows that such [D]efendant[] must be named cannot be characterized as a mistake.'" *Hogan*, 738 F.3d at 518 (quoting *Barrow*, 66 F.3d at 470); *see also Jordan v. City of New York*, No. 15-CV-6364, 2016 WL 1383534, at *2 (S.D.N.Y. Apr. 7, 2016) ("[L]ack of knowledge of a John Doe defendant's name does not constitute a mistake of identity." (alteration in original) (internal quotation marks omitted) (quoting *Hogan*, 738 F.3d at 518)); *Vasconcellos*, 2014 WL 4961441, at *7 (concluding that the plaintiff's claims did not relate back under Rule 15(c)(1)(C) because the plaintiff was "ignorant, not mistaken" about the John Doe defendants' identities); *Strada v. City of New York*, No. 11-CV-5735, 2014 WL 3490306, at *10 (E.D.N.Y. July 11, 2014) (citing *Hogan* and explaining that "*Barrow* remains good law . . . and precludes [the] [c]ourt from finding that [the] [p]laintiff's failure to amend the [c]omplaint to name the individual officers was a mistake contemplated by Rule 15(c)").

In *Barrow*, the plaintiff's failure to identify the defendants in his first three complaints was because the plaintiff did not know the arresting officers' names. *Barrow*, 66 F.3d at 470. The Second Circuit held that by amending the complaint to identify the officers by name after the statute of limitations had run, the plaintiff did not correct a mistake in the original complaint, but instead supplied information he lacked at the outset. *Id*. The court found that "[s]ince the

new names were added not to correct a mistake but to correct a *lack of knowledge*, the requirements of Rule 15(c) for relation back [were] not met." *Id.* (emphasis added).[12]

As evidenced by Plaintiff's September 6, 2010 letter to Superintendent Perez, one day after the alleged incident, and Plaintiff's grievance dated September 9, 2010, four days after the alleged incident, Plaintiff was able to identify "C[.]O. Deagan" and "Officer Deagan" as the purported cause of his injuries.  (*See* Pl.'s Ex. D-1.)  Indeed, Plaintiff admitted during his deposition that he "spelled . . . [Defendant's] name wrong" in the grievance, but Plaintiff did not allege he did not know Defendant's identity.  (Pl.'s Dep. 122–123.)[13]  Plaintiff chose to proceed in filing his suit against a John Doe just two weeks before the statute of limitations was set to expire, despite the fact that he "knew who the proper [D]efendant[] w[as]" the day after the alleged incident.  *Vasconcellos*, 2014 WL 4961441, at *7.  Because Plaintiff has not demonstrated that Defendant "should have known that, *but for a mistake of identity*, the original action would have been brought against [him]," *Hogan*, 738 F.3d at 517, the Court concludes that Plaintiff's amended pleading cannot relate back to his original Complaint, *see id.* at 518. Accordingly, Plaintiff cannot relate back the Amended Complaint under Rule 15(c)(1)(C).

_____

[12] While courts have grappled with the notion that *Barrow* was called into question by the Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), the Second Circuit has indicated in multiple post–*Krupski* decisions that it believes *Barrow* to be good law. *See, e.g.*, *Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015); *Hogan*, 738 F.3d at 517–18; *see also Scott v. Village of Spring Valley*, 577 F. App'x 81, 82–83 (2d Cir. 2014).

[13] The Court recognizes that courts in this Circuit have granted leave to correct a mislabeling or misspelling of a defendant's name under Federal Rule of Civil Procedure 15.  *See, e.g.*, *Vadenais v. Christina*, 325 F.2d 157, 158 (2d Cir. 1997) (reversing judgment because the "original motion should have been to correct the misnomer, not to add a defendant after the statute of limitations had run" and such a motion "should have been granted"); *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 399 (E.D.N.Y. 1998) (granting an unopposed motion to correct the caption mislabeling a defendant); *Daniels v. Loizzo*, 174 F.R.D. 295, 299–300 (S.D.N.Y. 1997) (granting leave to correct the misspelling of names of defendants previously served).  However, in none of these cases did the plaintiff identify the defendant as "John Doe," suggesting a lack of knowledge of the defendant's *identity*.

<u>c.  Federal Rule of Civil Procedure 15(c)(1)(A)</u>

Under Rule 15(c)(1)(A), an amended pleading relates back when "the law that provides the applicable statute of limitations allows relation back."  Fed. R. Civ. P. 15(c)(1)(A).  In applying Rule 15(c)(1)(A), courts are "to look to the entire body of limitations law that provides the applicable statute of limitations."  *Hogan*, 738 F.3d at 518 (italics omitted).  Because § 1983 derives its statute of limitations from state law, the applicable state law is CPLR § 1024.  (*See* Opinion 9.)  Section 1024 of the CPLR states:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known.  If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024.

As the Court explained in its Opinion & Order on Defendant's Motion to Dismiss, Plaintiff's ignorance of at least Deacon's first name was a sufficient basis for designating Deacon as "John Doe" under § 1024.  (*See* Order 10.)  *See Deutsche Bank Nat. Trust Co. v. Turner*, 934 N.Y.S.2d 33, No. 10-CV-41152, 2011 WL 2535025, at *2 (Civ. Ct. Apr. 22, 2011) ("[A 'John Doe'] designation can only be made if the designating party does not know all or part of the other party's name; otherwise, the party must be identified to the extent that his or her name is known."); *Maurro v. Lederman*, 795 N.Y.S.2d 867, 870 (Sup. Ct. 2005) ("An explicit prerequisite to the use of CPLR [§] 1024 is plaintiff's ignorance of the defendant's name."); *First Fed. Savings & Loan Ass'n of Rochester v. Souto*, 601 N.Y.S.2d 43, 44 (Civ. Ct. 1993) (noting that "such a designation can only be made if the designating party does not know all or part of the other party's name").

Under CPLR § 1024, a plaintiff may substitute a named party for a John Doe party if the

plaintiff:  (1) "'exercise[s] due diligence, prior to the running of the statute of limitations, to identify the defendant by name,'" and (2) "describe[s] the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'"  *Hogan*, 738 F.3d at 519 (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (App. Div. 2009)) (third alteration in original).[14]

As the Court previously noted, (*see* Opinion at 15–17), Plaintiff satisfies the second requirement of § 1024 because Plaintiff "describe[d] the John Doe party 'in such form as . . . fairly apprise[d] [Deacon] that he [was] the intended defendant.'"  *Hogan*, 738 F.3d at 519 (internal quotation marks and alteration omitted).  Plaintiff's original Complaint contained a detailed description of the date, time, and specific location of the incident and Defendant's precise conduct to sufficiently notify Deacon that he was the intended defendant.  (*See* Compl. 1, 3.)  *See Maurro*, 795 N.Y.S.2d at 871 (finding that the plaintiff's description of "'Jane Doe' as 'a/k/a "Jane" Usa [sic], M.D., the physician who treated [the plaintiff] at [the defendant's] office whose name is fictitious as presently unknown' was sufficient for [the] purpose" of fairly apprising the defendant that she was the intended defendant); *Duncan v. City of New York*, No. 11-CV-3901, 2014 WL 3530858, at *3 (E.D.N.Y. July 15, 2014) (finding the defendant "was fairly apprised that he was one of the John Doe defendants against whom [the plaintiff] intended to assert a claim" because, among other things, the relevant complaint "made clear that there was an additional unidentified officer whom [the plaintiff] specifically described as having

---

[14] Pursuant to CPLR § 306-b, once a John Doe complaint is filed, a plaintiff must serve it on the correct defendant "within one hundred twenty days after the commencement of the action."  CPLR § 306-b; *see Vasconcellos*, 2014 WL 4961441, at *8; *cf. Fisher v. County of Nassau*, No. 10-CV-677, 2011 WL 4899920, at *4 (E.D.N.Y. Oct. 13, 2011) (explaining that under CPLR § 1024, a plaintiff may sue an unknown defendant if he, among other things, "identif[ies] and serve[s] the previously-unknown defendant within 120 days of his filing suit").  Here, Defendant does not dispute that Plaintiff met this requirement.

participated in holding him down on the barbershop floor and punching and kicking him—the precise conduct he . . . ascribe[d] to [the defendant]" in his operative complaint).

However, Plaintiff fails to satisfy the first requirement of § 1024—due diligence.  Due diligence in this context "requires that a plaintiff 'show that he or she made timely efforts to identify the correct party before the statute of limitations expired.'"  *Strada*, 2014 WL 3490306, at *5 (quoting *Justin v. Orshan*, 788 N.Y.S.2d 407, 408 (App. Div. 2005)); *see also Sims v. Electrolux Home Prods., Inc.*, No. 13-CV-625, 2014 WL 4828151, at *10 (N.D.N.Y. Sept. 29, 2014) (same).  Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the expiration of the statute of limitations, a plaintiff is not entitled to make use of the "John Doe" procedure provided in CPLR § 1024.  *See*, *e.g.*, *Galberth v. Washington*, No. 14-CV-691, 2016 WL 1255738, at *10 (S.D.N.Y. Mar. 29, 2016) (finding "[p]laintiff cannot take advantage of [§] 1024 because he did not exercise due diligence to identify [the d]efendants prior to the running of the statute of limitations . . . [and] waited more than two and one-half years after the alleged misconduct to file his [c]omplaint." (internal quotation marks, citation, and italics omitted)); *Vasconcellos*, 2014 WL 4961441, at *9 (noting that "[n]othing before the [c]ourt indicate[d] that [the plaintiff] took any steps to ascertain the [o]fficer [d]efendants' identities prior to retaining counsel" and "[t]he declaration submitted by [the plaintiff's] attorney contain[ed] no indication that [the attorney] exercised 'due diligence' or made any genuine effort to identify the [o]fficer [d]efendants before [the expiration of the statute of limitations[,]" and the plaintiff's attorney "did not file a *Valentin* demand or take any other steps to identify the [o]fficer [d]efendants until after the initial conference [held after the relevant statute of limitations expired], when the court (not counsel) entered a *Valentin* order" (citations omitted)); *JCG*, 2014 WL 1630815, at *14 (concluding that

the plaintiff could not satisfy the first requirement of § 1024 because he waited until the statute

of limitations had nearly run to file his complaint, and "appear[ed] to have expended no efforts at

all to identify the [i]ndividual [d]efendants in the three years [that followed the events giving rise

to the plaintiff's allegations], . . . . [such as] "serv[ing] discovery demands upon the known

parties, [seeking] disclosures pursuant to a [FOIL] request, or writ[ing] letters to the Attorney

General's Office" (internal quotation marks omitted)); *Temple v. N.Y. Cmty. Hosp.*, 933

N.Y.S.2d 321, 323 (App. Div. 2011); (concluding that "the plaintiff failed to exercise due

diligence to discover the identity of the John Doe defendants prior to the expiration of the statute

of limitations[,]" in part, because "[t]here [was] no indication in the record that the plaintiff

engaged in any pre-action discovery or [FOIL] . . . requests[,]" and when the responses to "some

limited discovery demands" were "less than adequate, the plaintiff failed to promptly seek

further discovery, neglected to submit a properly executed authorization to the disclosing party,

and failed to properly and promptly seek assistance from the [New York] Supreme Court"); *cf.*

*Lepore v. Town of Greenburgh*, 992 N.Y.S.2d 329, 332 (App. Div. 2014) (holding that the New

York Supreme Court erred in failing to grant the defendants' motion to dismiss because plaintiffs

failed to identify the relevant John Does and serve them prior to the expiration of the statute of

limitations and "failed to raise a triable issue of fact as to whether they exercised due diligence in

attempting to identify and serve the John Does such that the applicable limitations periods had

tolled or were otherwise inapplicable").

  In his original Complaint, Plaintiff asserted that he "wrote to [the] Inspector General for

full names and . . . had no respon[s]e." (Compl. 1; *see also* Pl.'s Opp'n 7.)  While such a request

would indicate that Plaintiff "did make *some* effort to . . . identify . . . Defendant[] prior to the

running of the statute of limitations," *Dancy v. City of New York*, No. 15-CV-432, 2016 WL

6441554, at *6 (E.D.N.Y. Oct. 28, 2016), Plaintiff's letter to the Inspector General did not, in fact, request full names.  Rather, Plaintiff's letter was merely a request for an official investigation into the alleged incident.  (*See* Pl.'s Ex. G-2 (seeking to "have this matter investigated" by the Inspector General)).  Plaintiff not only failed to exercise due diligence as required by § 1024, but misrepresented his efforts to do so.  Plaintiff offers no additional evidence of his efforts to identify Deacon before the expiration of the statute of limitations.

Defendant avers that Plaintiff knew Defendant's identity during the statute of limitations period, as evidenced, in part, by Plaintiff's "regular interactions with Officer Deacon for approximately six weeks while housed in Downstate Correctional Facility . . . from August 13, 2010 until [Plaintiff's] transfer out of Downstate on September 24, 2010."  (Def.'s Mem. 6.) Indeed, Plaintiff has admitted that Deacon was a regular officer on Plaintiff's cell block, (*see* Pl.'s Dep. 27–28), and that correctional officers "wear a name plate," albeit a small one, (Pl.'s Suppl. Mem. 7).  Yet, Plaintiff waited until the final two weeks in the statute of limitations period to file his Complaint, thus limiting his ability to timely use discovery tactics to determine Defendant's name.  *See JCG*, 2014 WL 1630815, at *13–14 (finding insufficient due diligence where plaintiff waited until days before statute of limitations ran to file suit and engaged in no formal attempts to compel disclosure in the preceding three years); *Opiela v. May Indus. Corp.*, 781 N.Y.S.2d 353, 354 (App. Div. 2004) ("While [the] plaintiff's own efforts to identify the actual defendants . . . resulted in inaccurate information, he could have obtained [their] names before expiration of the three-year limitations period.").  Plaintiff had sufficient opportunity during the weeks he remained at Downstate to inquire about Deacon's full name, either from fellow inmates or prison officials, and Plaintiff could have submitted a FOIL request.  *See JCG*, 2014 WL 1630815, at *14 (finding the plaintiff "could have served discovery demands upon the

27

known parties, sought disclosures pursuant to a [FOIL] request, or written letters to the Attorney

General's Office"); *Williams v. United States*, No. 07-CV-3018, 2010 WL 963474, at *13

(S.D.N.Y. Feb. 25, 2010) ("[The] [p]laintiff appears to have expended no efforts at all to identify

the [i]ndividual [d]efendants. . . . [The] [p]laintiff could have filed FOIL requests or written

letters to the USAO or even his criminal defense attorney. Even if unsuccessful, this would have

at least evinced some degree of diligence." (citations omitted)). Indeed, Plaintiff was not

precluded from continuing these inquiries during the remaining 35 months after he was

transferred to Elmira. Accordingly, because Plaintiff cannot meet the first requirement of CPLR

§ 1024, his Amended Complaint cannot relate back under Rule 15(c)(1)(A).

## III. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion For Summary Judgment.

The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 44),

enter judgment for Defendant, and close the case.

SO ORDERED.

Dated:      January **23**, 2017
               White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE